[Cite as *In re Yates*, 2011-Ohio-5293.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: SHAQUILLE A. YATES


SHAQUILLE A. YATES

       Applicant.


 Case No. V2010-50451

Commissioners:
Lloyd Pierre-Louis, Presiding
Gregory P. Barwell
Susan G. Sheridan


ORDER OF A THREE-COMMISSIONER PANEL

{¶1}On October 15, 2009, the applicant filed a compensation application as the result of being shot during a robbery. On February 8, 2010, the Attorney General issued a finding of fact and decision denying the applicant's claim for an award of reparations based upon the fact the applicant engaged in substantial contributory misconduct at the time of the incident. Specifically, the applicant was shot during an illegal drug transaction. On February 18 and 26, 2010 the applicant submitted requests for reconsideration. On April 20, 2010, the Attorney General rendered a Final Decision finding no reason to modify the initial decision. On May 11, 2010, the applicant filed a notice of appeal from the April 20, 2010 Final Decision of the Attorney General. Hence, a hearing was held before this panel of commissioners on November 4, 2010 at 11:35 A.M.

{¶2}The applicant and his attorney Michael Falleur appeared at the hearing, while Assistant Attorney General David Lockshaw represented the state of Ohio.

{¶3}The sole issue in this case is whether the applicant engaged in substantial contributory misconduct at the time of his injury.   The Attorney General asserts that the applicant made admissions against interest to hospital personnel that he was engaged in a marijuana transaction at the time he was shot.

{¶4}The Attorney General called Dodie Allen, a licensed social worker who worked at Nationwide Children's Hospital to testify.   She stated she spoke with Shaquille Yates on the day of the incident and she recorded what was said.   The Attorney General presented the witness with State's Exhibit A, a medical record dated July 23, 2009 which also contained notes prepared by Ms. Allen.   Ms. Allen was directed to read the second paragraph of the document handed to her.   She read the following:

> {¶5}"Patient admitted he had 'a lot of cash' on him.   First stated he had $2000, then said he had $1000.   Initially told officer 1480 that he worked at Speedway on College and Livingston and just likes to save his money.   Later admitted that he 'bought 2 bags from my dude' outside Kim's store.   Patient denied smoking anything but noted he was about to (smiling).   States he had walked back to his car and he heard a guy say, 'Keal Bro', then heard gun clicked (thought it was a high point 9.)   States one dude was behind him and the other walked around him and told him not to try to run.   Patient reportedly had THC in his pants pocket."

{¶6}She related she heard Mr. Yates make these statements and would not have recorded them if they had not been made.

{¶7}Upon cross-examination, Ms. Allen admitted she made notes about what was said and after the document was prepared the notes were destroyed.   She admitted to taking notes from questions that she as well as the police asked the applicant.   Ms. Allen stated she could not explain the inconsistencies between her notes and the report filed by the Columbus Police Department.   Whereupon, Ms. Allen's testimony was concluded.

{¶8}The applicant called Bertl Yates, the applicant's mother, to testify.  In the summer in which Shaquille was injured he was attending Life Skills, a preparatory course for high school graduation, and was also working at a Speedway gas station. She stated Shaquille was saving his money and desired to open a bank account.  On the day of the incident he intended to open a bank account and his friend was going to give him a ride to the bank.  She related after she learned her son was shot she went to the hospital.  Ms. Yates recollected the events surrounding the hospital treatment.

{¶9}Upon cross-examination, Ms. Yates admitted she was not at the scene of the shooting.  Whereupon, her testimony was concluded.

{¶10}The applicant then called Brandon Cox to the witness stand.  Brandon Cox stated he was a friend of the applicant.  On the day of the incident, Mr. Cox was supposed to take Shaquille to his bank to cash Shaquille's check and then take Shaquille to the Fifth/Third Bank near Shaquille's work to open a bank account. However, Mr. Cox was not able to do this since he had to pick up his son from school. Whereupon, Mr. Cox's testimony was concluded.

{¶11}Shaquille Yates was then called to testify.  Mr. Yates related he is currently employed with Buckeye Steel where he works ten hour days six days a week. Mr. Yates was shown paycheck stubs from Speedway and his enrollment papers at Life Skills, Applicant's Exhibit 1.  Mr. Yates testified that he was saving his earnings for a car, since his family did not own a vehicle.

{¶12}On the day of the incident Brandon Cox was going to take him to a bank to cash his check then to another bank to open an account.  When he learned that Brandon could not give him a ride he went to a store on the corner of Frebis and Fairwood to cash his check.  He then returned home, but still wanted to go to the bank to open an account.  He saw people he knew and inquired whether they could give him a ride.  An individual known as "Slick" offered him a ride in return for gas money. Whereupon, they proceeded in Slick's car.  Slick informed Shaquille that he needed to stop at a store.  They proceeded to a store on the corner of Livingston and Miller.

Shaquille went into the store, while Slick talked to people outside of the store.   While in the store he was approached by a former fellow student "E.J." and E.J.'s friend "Ray-Ray".   E. J. asked him for change for a twenty.   Shaquille stated he carefully took his money out of his pocket since he knew the danger of flashing money.   He gave E.J. 4 fives for the twenty and E.J. and Ray-Ray left the store.   As Shaquille was returning to Slick's car to leave, he heard a gun cock and Ray-Ray stated don't try to run and give me what's in your pocket.   A physical altercation ensued whereupon he was shot by Ray-Ray.   At that time he threw the wad of money in his pocket at Ray-Ray's chest and jumped in the car to go to the hospital.   Slick then dropped him off at the out-patient part of Children's Hospital and quickly departed the scene.

{¶13}After about ten minutes he was transported from the out-patient clinic to the emergency room.   He stated he was then administered a shot of pain medication and then was questioned by hospital personnel.   He related he spoke to police approximately 15 minutes after he left the trauma room.

{¶14}Mr. Yates stated on the day of his shooting he was in the possession of two "blunts" or "joints."   He admitted that approximately three days before the incident he purchased $10 worth of marijuana from "Smoke".   He had that with him on the day of the incident and that is why he went to the store to buy two cigarillos to facilitate smoking the marijuana.

{¶15}Mr. Yates stated he did not recall seeing Dodie Allen.   She could have been present but she would have been wearing a surgical mask so he would not have been able to recognize her.   He did not recall speaking to a woman while he was in the trauma unit.

{¶16}Mr. Yates explained that on the day of the incident he had $550.00 but he would have never told anyone he had $1,000 or $2,000 in his possession.   Whereupon, the applicant's testimony was concluded.

{¶17}In closing the Attorney General argued that a discrepancy between statements the applicant gave to police as opposed to statements he made to a social worker is understandable. The applicant would be more guarded in his statements to police. The Attorney General stated that Dodie Allen's testimony was credible and the applicant has not presented sufficient evidence to rebut the incriminating statements made at the hospital. Furthermore, the Attorney General contends the applicant purchased two bags of marijuana at the store and was subsequently shot as the result of this transaction. Therefore, the Attorney General's Final Decision should be affirmed since the applicant engaged in substantial contributory misconduct.

{¶18}The applicant stated that a review of the medical report reveals "CPD and detective to bedside interviewing pt". Accordingly, Ms. Allen was taking notes while listening to the exchange between the applicant and the Columbus Police. The major issue is whether the applicant said "two blunts" or "two bags." The applicant contends Ms. Allen simply could have misheard or was not familiar with the term blunts and wrote down bags. Marijuana was not the issue between the applicant and police, since he readily admitted to police he was in possession of two blunts.

{¶19}The applicant then focused on the statements provided by Detective Longworth of the Columbus Police Department. In a Field Investigation Report concerning the incident, Detective Longworth stated: "The claimant was not doing anything that would have contributed to his being the victim of a crime on July 23, 2009." Consequently, the applicant contends that the Attorney General has presented insufficient evidence to establish that the applicant was engaged in contributory misconduct.

{¶20}The Attorney General stated that in order for the panel to reach the conclusion that the applicant engaged in substantial contributory misconduct it must believe that this was a drug deal gone bad. The Attorney General believes Dodie

Allen's notes should be given credence due to the detail she provides. Whereupon, the hearing was concluded.

{¶21}R.C. 2743.51(M) states:

"(M) 'Contributory misconduct' means any conduct of the claimant or of the victim through whom the claimant claims an award of reparations that is unlawful or intentionally tortious and that, without regard to the conduct's proximity in time or space to the criminally injurious conduct, has a causal relationship to the criminally injurious conduct that is the basis of the claim."

{¶22}R.C. 2743.60(F) in pertinent part states:

"In determining whether to make an award of reparations pursuant to this section, the attorney general or panel of commissioners shall consider whether there was contributory misconduct by the victim or the claimant. The attorney general, a panel of commissioners, or a judge of the court of claims shall reduce an award of reparations or deny a claim for an award of reparations to the extent it is determined to be reasonable because of the contributory misconduct of the claimant or the victim."

{¶23}The Attorney General has the burden with respect to contributory misconduct [exclusionary criteria R.C. 2743.60]. *In re Williams*, V77-0739jud (3-26-79); and *In re Brown* (12-13-79).

{¶24}Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{¶25}Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause. The obligation of a party to establish by

evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

{¶26}The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. *State v. DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus. The court is free to believe or disbelieve, all or any part of each witness' testimony. *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548.

{¶27}The admission of felony drug use to hospital personnel creates a rebuttable presumption which the applicant must overcome by the presentation of contrary evidence. Failure to do so will result in the claim being denied pursuant to R.C. 2743.60(F)(1)(e). *In re Hartsough*, V2008-30880tc (12-11-09).

{¶28}Illegal drug transactions create situations where it is reasonably foreseeable that personal injury or death could result. *In re Foreman*, V2007-90749tc (12-30-96); *In re McCreary*, V2006-20917tc (6-15-07), affirmed jud (11-5-07).

{¶29}From review of the case file and with full and careful consideration given to the testimony presented and the arguments made at the hearing, we find the Attorney General has failed to prove by a preponderance of the evidence that the applicant engaged in contributory misconduct at the time he was injured. In order for us to find contributory misconduct we must be convinced that the applicant engaged in a drug deal which was causally connected to his shooting.

{¶30}On one hand we had the testimony of Dodie Allen, a social worker at Nationwide Children's Hospital who recollected that the applicant admitted he purchased "2 bags" of marijuana from an individual which subsequently resulted in his shooting. However, Ms. Allen admitted the trauma room was crowded with approximately twenty people, the police were questioning the applicant simultaneously with her interview, the applicant had been shot, was in severe pain, and under the influence of pain medication. On the other hand, Columbus Police Detective Longworth noted in his report that the applicant had not done anything to "contribute to

his being the victim of a crime on July 23, 2009." Certainly, if the applicant was engaged in the purchase of two bags of marijuana, drug trafficking, that would have been a contributory event. Finally, we found the testimony of the applicant to be credible and he admitted he was in possession of two blunts, a cigar stuffed with marijuana, at the time of the shooting. It appears based on the chaotic setting of the trauma room Ms. Allen could have interpreted the word "blunt" to be "bag." Finally, with respect to medical questions we would defer to the opinion of a medical professional over the impression of a police officer. By the same token with respect to contributory criminal activity we believe a police officer's assessment would prevail over the recollection of a social worker.

{¶31}Accordingly, we find the Attorney General has failed to meet his burden to prove, by a preponderance of the evidence, that the applicant engaged in contributory misconduct at the time he was shot. We find the possession of a small amount of marijuana, a minor misdemeanor, was not causally related to being shot in a robbery. Therefore, the April 20, 2010 decision of the Attorney General is reversed.

IT IS ORDERED THAT

{¶32}1) Applicant's Exhibit 1 is admitted in to evidence;

{¶33}2) State's Exhibit A is admitted into evidence;

{¶34}3) The April 20, 2010 decision of the Attorney General is REVERSED and judgment is rendered in favor of the applicant;

{¶35}4) This claim is remanded to the Attorney General for total economic calculations and decision;

{¶36}5) This order is entered without prejudice to the applicant's right to file a supplemental compensation application, within five years of this order, pursuant to R.C. 2743.68;

{¶37}6) Costs are assumed by the court of claims victims of crime fund.

_____

LLOYD PIERRE-LOUIS
Presiding Commissioner


_____

GREGORY P. BARWELL
Commissioner


_____

SUSAN G. SHERIDAN
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2011\January 2011\V2010-50451 Yates.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Franklin County Prosecuting Attorney and to:


Filed 1-27-11
Jr. Vol. 2277, Pgs. 180-188
Sent to S.C. Reporter 10-13-11